UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL CASE NO. 19-36-DLB-CJS

KRISTI PITTMAN and DALE GOODEN, as Parents, Guardians,
and Next Friends of M.G., J.G., and D.G.                                    PLAINTIFFS

v.                    MEMORANDUM OPINION AND ORDER

ANGELA RUTHERFORD, et al.                                                   DEFENDANTS

* * * * * * * * * * * * * * * * *

This matter is before the Court on a Motion to Dismiss (Doc. # 9) filed by Brown County Department of Job and Family Services and a Motion for Leave to File a Rebuttal to Defendant's Motion to Dismiss (Doc. # 17) filed jointly by Plaintiffs Kristi Pittman and Dale Gooden. The Motion to Dismiss having been fully briefed (Docs. # 15 and 16), and the time for filing a response to the Motion for Leave to File a Rebuttal having now expired, *see* L.R. 7.1(c), the pending Motions are now ripe for review by this Court. For the reasons set forth herein, both Motions are **granted**.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

During the summer of 2011, Plaintiff Dale Gooden learned that M.G. (male) had been removed from his mother's custody. (Doc. # 1-1 at 55). During discussions with Defendant Brown County Department of Job and Family Services ("BCDJFS"), Plaintiffs Dale Gooden and Kristi Pittman indicated that they might be willing to have M.G. (male) placed in their home. *Id.* at 56. In view of this, Defendants Angela Rutherford and Megan

1

Siep,[1] employees of BCDJFS, made a trip to Plaintiffs' home in Kentucky to "inspect Plaintiffs' residence and to provide additional information to Plaintiffs in an effort to induce Plaintiffs into allowing the placement of [M.G. (male)] in Plaintiffs' home." *Id.* at 54–56.

During the visit, Plaintiffs asked Defendants Rutherford and Siep why M.G. (male) had been removed from his home in the first place. *Id.* at 56. Plaintiffs raised this question out of concern for the three minor children (D.G., J.G., and M.G. (female)) who were already living in their home. *Id.* They specifically indicated that "they would not accept the placement of M.G. (male) in the home if the child had been sexually abused or had committed any acts of sexual abuse or sexual acting out, as they feared that such conduct, if it had occurred, could present a danger to their children." *Id.* Plaintiffs allege that Defendants Rutherford and Siep explained that M.G. (male) had neither been sexually abused nor had he committed acts of sexual abuse or sexually acting out. *Id.* Based on these assurances, Plaintiffs accepted placement of M.G. (male). *Id.* at 57. M.G. (male) was placed in Plaintiffs' home on August 7, 2011.

Less than four years later, around January 7, 2015, Plaintiffs allege that they "discovered that M.G. (male) had engaged in acts of sexual abuse" against J.G. and D.G. *Id.* This discovery occurred when D.G. made comments of a sexual nature to J.G. during a bath. *Id.* After hearing the comment, Plaintiff Pittman told M.G. (female) about the conversation; M.G. (female) confirmed that M.G. (male) had engaged in sexual abuse against the other three children in the home. *Id.* On January 8, 2015, Plaintiff Pittman took M.G. (male) for evaluation and treatment at Our Lady of Peace in Louisville,

---

[1] Defendant BCDJFS notes that Defendant Megan Siep's name was spelled incorrectly in the Complaint and Amended Complaint. (Doc. # 9-1 at 2). Her last name is spelled with one "p" rather than two. *Id.*

Kentucky; upon his release on January 27 of that year, Plaintiffs were ordered to take M.G. (male) back into their home. *Id.*

In May of 2016, Pittman confronted M.G. (male) after she learned that M.G. (male) and M.G. (female) "intended to 'play wedding.'" *Id.* Plaintiffs allege that M.G. (male) indicated to Pittman that he planned to "engage in sexual acts with M.G. (female)." *Id.* Plaintiffs reported the comments and, following this threatened sexual abuse, M.G. (male) was removed from Plaintiffs' home. *Id.*

In light of these events, the Plaintiffs tried to determine why M.G. (male) was being sexually abusive. *Id.* In November of 2016, they obtained counseling records which indicated that M.G. (male) was initially removed from his home "due to sexual abuse allegations." *Id.* at 57–58. Plaintiffs also found out from the records that M.G. (male) was removed from his first foster care placement "because he had tried to rape a younger female while in foster care." *Id.* at 58.

Following this discovery, on February 12, 2019, Plaintiffs filed suit in Bracken County Circuit Court against Rutherford, Siep, and BCDJFS. *Id.* at 5–12. The Complaint included claims of negligent misrepresentation, fraudulent misrepresentation, and intentional infliction of emotional distress against all Defendants; Plaintiffs also requested punitive damages. *Id.* at 9–11. In state court, on March 13, 2019, Defendants filed a Motion to Dismiss the case for lack of personal jurisdiction.[2] *Id.* at 29, 37–43. Two days later, on March 15, Plaintiffs filed their First Amended Complaint. *Id.* at 53–61. Defendants then removed the case to this Court on March 21, 2019. (Doc. # 1).

---

[2] This initial Motion to Dismiss pending in state court when the case was removed was ultimately denied by this Court as moot. (Doc. # 13).

On April 4, 2019, Defendants Rutherford and Siep filed their Answer to the First Amended Complaint (Doc. # 10), while Defendant BCDJFS filed a Motion to Dismiss (Doc. # 9).  After the Motion to Dismiss was fully briefed (Docs. # 15 and 16), Plaintiffs filed a "Motion for Leave to File Plaintiffs [sic] Rebuttal Memorandum to Defendant's Motion to Dismiss."  (Doc. # 17).  The Motion is effectively a Motion for Leave to File a Sur-Reply; no response was filed to this Motion, and the time for doing so under the Local Rules has now expired.  *See* L.R. 7.1(c).  Thus, both pending Motions are now ripe for review.

## II.    MOTION FOR LEAVE TO FILE A REBUTTAL

The Local Rules of the Eastern District of Kentucky "do not contemplate or permit the filing of a sur-reply, and hence such filings are not permitted absent leave of the Court."  *Bell v. Russell Cty.*, No. 5:17-cv-116-KKC, 2017 WL 3530152, at *2 (E.D. Ky. Aug. 16, 2017) (internal citations omitted) (citing LR 7.1(c), (g)).  Generally, sur-replies are permitted when new arguments "are included in a reply brief, and a nonmovant's ability to respond . . . has been vitiated."  *Key v. Shelby Cty.*, 551 F. App'x 262, 265 (6th Cir. 2014) (quoting *Seay v. Tenn. Valley Auth.*, 339 F.3d 454. 481 (6th Cir. 2003)).  Here, Defendant BCDJFS raises in reply that it is immune from suit under Kentucky immunity law.  (Doc. # 16 at 3–4).  In its initial Motion, however, BCDJFS only argued that it was immune from suit under Ohio law.  (Doc. # 9-1 at 4–5).  As BCDJFS raised a new argument in its reply, which Plaintiffs have not yet had an opportunity to respond to, the Court finds a sur-reply to be appropriate and the Motion is **granted**.[3]  *See Key*, 551 F.

---

[3]   The Court finds this to be the case even though Plaintiffs seemed to anticipate that Defendant might raise the issue. *See* (Doc. # 15 at 13) ("Because Defendant has not asserted any right to immunity under Kentucky law, Plaintiffs do not address that issue herein.").

4

App'x at 265. The proposed sur-reply (Doc. # 17-1) will be filed in the record and considered during the Court's adjudication of the pending Motion to Dismiss.

## III. MOTION TO DISMISS

BCDJFS argues that the claims against it should be dismissed for two reasons—(1) BCDJFS is not an entity capable of being sued, and (2) even if it BCDJFS could be sued it would be immune from suit. As BCDJFS is not a suable entity, *see infra*, dismissal is appropriate and the Court need not address the issue of immunity.[4]

### A. Standard of Review

In order "to survive a motion to dismiss, a complaint must contain factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is found to be plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In adjudicating a motion to dismiss, the Court accepts all allegations in the complaint as true and considers them in the light most favorable to the plaintiff. *Hill v. Snyder*, 878 F.3d 193, 203 (6th Cir. 2017) (citing *Ashcroft*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570). In reviewing a motion to dismiss for failure to state a claim, the Court "may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to the defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims

---

[4] Defendant's Motion is styled as a "Defendant Brown County Department of Job and Family Services' Motion to Dismiss Complaint and Amended Complaint." (Doc. # 9). BCDJFS later admits though that "there is no reason for the Court to assess BCDJFS's Motion to Dismiss as it relates to the initial Complaint." (Doc. # 16 at 2). Accordingly, the Court will only assess the Motion to Dismiss as it relates to the Amended Complaint.

contained therein." *DeJohn v. Lerner, Sampson & Rothfuss*, No. 1:12-cv-1705, 2012 WL 6154800, at *2 (N.D. Ohio Dec. 11, 2012) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

### B. Capacity to Be Sued

The Court must first determine if the BCDJFS is an entity that can be sued. To determine capacity to be sued for an entity that is not an individual or a corporation, the Court looks to "the law of the state where the court is located." Fed. R. Civ. P. 17(b)(3). Here, therefore, the Court must determine whether BCDJFS—a county department—is a suable entity under Kentucky law. *Id.* If a defendant "lacks the capacity to be sued, Plaintiff fails to state a claim against it upon which relief can be granted," and claims against that defendant must be dismissed. *Loper v. Cuyahoga Cty. Children & Family Servs.*, No. 1:18-cv-1598, 2019 WL 1597552, at *3 (N.D. Ohio Apr. 15, 2019).

"Under Kentucky law, a governmental entity is a non-suable entity if the nature of the defendants and allegations, and the function of the entity indicate the claim is essentially against the county or city." *Hocker v. Pikeville City Police Dept.*, No. 7:11-cv-122-EBA, 2013 WL 587897, at *4 (E.D. Ky. Feb. 13, 2013) (citing *Smallwood v. Jefferson Cty. Gov.*, 743 F.Supp. 502, 503 (W.D. Ky. 1990)). In other words, if the entity being sued is "merely an extension of the county or city," the proper party is the county or city rather than the entity.[5] *Id.* In determining if a department of a county or city is a suable entity under Kentucky law, a sister court relied on the level of apparent control the city had over the department. *See id.* (noting that the Pikeville city service commission has control over many aspects of the police department "including hiring of officers, the size of the police

---

[5] Counties are suable entities in Kentucky. *See, e.g.*, *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994); *Brown v. Marshall Cty. Ky.*, 394 F.3d 498, 500 (6th Cir. 1968).

6

force, and other significant policy determinations"). Alternatively, a Western District of Kentucky court relied on evidence in the public realm to determine if a department was separate from a county. *See Longwood, LLC v. Voegele*, No. 3:17-cv-00676-TBR, 2018 WL 1660086, at *5–6 (W.D. Ky. Apr. 5, 2018) (discussing the county fiscal court website, which, among other things, lists "County Engineer" as one "among a list of several other services performed by the Oldham County Fiscal Court" and "prominently features 'Oldham County Fiscal Court' at the top" of the "County Engineer" webpage, and ultimately finding that the County Engineer is not a separate entity from the Oldham County Fiscal Court).

For example, county and city police departments in Kentucky are not suable entities under Kentucky law. *See, e.g.*, *Matthews*, 35 F.3d at 1049 ("Since the Police Department is not an entity which may be sued, Jefferson County is the proper party to address the allegations of Matthew's complaint."); *Gueye v. Richards*, No. 2:15-cv-178-DLB, 2015 WL 6395009, at *6 (E.D. Ky. Oct. 21, 2015) ("The Boone County Sheriff's Office is not a municipality or independent legal entity; rather, it is merely an adjunct or department of Boone County, Kentucky, or the Boone County Fiscal Court."); *Hocker*, 2013 WL 587897, at *4 (finding that the Pikeville City Police Department is not a suable entity because "the city exercises significant control over the police department and the department acts as an extension of the city"). Detention centers and county engineers are similarly "an alter ego of the county" and lack the capacity to be sued in Kentucky. *Moore v. Mason Cty. Ky.*, No. 2:16-cv-185-DLB-CJS, 2018 WL 4211732, at *5 (E.D. Ky. Sept. 4, 2018) (quoting *Bryant v. Pulaski Cty. Det. Ctr.*, 330 S.W.3d 461, 465 (Ky. 2011)); *Longwood, LLC*, 2018 WL 1660086, at *5–6.

The Court similarly finds that an Ohio county's department of job and family services is not a suable entity in Kentucky. The Ohio Revised Code makes clear that an Ohio county has a significant amount of control over the county's department of job and family services. In fact, the Code explicitly states that "[u]nder the control and direction of the board of county commissioners, the county director of job and family services shall have full charge of the county department of job and family services." OHIO REV. CODE § 329.01. For example, the director of the department is "appointed by the board of county commissioners." Also, the board of commissioners approves "all necessary assistants and superintendents of institutions under the jurisdiction of the department," appoints administrators, and reviews the budget estimate for the department. *Id.* §§ 329.01, 392.02, 392.021. Additionally, among other things, the department must "exercise any powers and duties relating to family services duties or workforce development activities imposed upon the county department of job and family services by law, *by resolution of the board of county commissioners*, or by order of the governor, when authorized by law, to meet emergencies during war or peace." *Id.* § 329.04 (emphasis added). This level of involvement by the board of commissioners is similar to activities previously found to indicate county or city control over a department. *See Hocker*, 2013 WL 587897, at *4. Based on the significant role of a board of county commissioners in managing and overseeing an Ohio county's department of job and family services, Brown County—through its board of commissioners—has a substantial amount of control over BCDJFS.

The allegations in the Amended Complaint confirm this. Plaintiffs allege that BCDJFS is "an agency or instrumentality of Brown County, Ohio and/or the State of Ohio."

(Doc. # 1-1 at 55). Being an agency or instrumentality of Brown County suggests that the County has some level of control over BCDJFS. *See* BLACK'S LAW DICTIONARY, *Agency* (11 ed. 2019) (defining "agency" most relevantly as "[a] relationship that arises when one person (a principal) manifests assent to another (an agent) that the agent will act on the principal's behalf, subject to the principal's control, and the agent manifests assent or otherwise consents to do so"); BLACK'S LAW DICTIONARY, *Instrumentality* (11 ed. 2019) (defining "instrumentality" most relevantly as "[a] means or agency though which a function of another entity is accomplished, such as a branch of a governing body"). Control over aspects of a department can indicate that the department is not a separate entity. *Hocker*, 2013 WL 587897, at *4.

Finally, turning to how the department is presented in the public realm, *see Longwood, LLC*, 2018 WL 1660086, at *6–7, a review of the Brown County website[6] suggests that BCDJFS is indeed "merely an extension of the county." *Hocker*, 2013 WL 587897, at *4. Importantly, the website lists a number of "County Services," one of which

---

[6] The Court finds that the Sixth Circuit's nearly fifteen-year-old, unpublished ruling in *Passa v. City of Columbus* that a court could not consider statements on a website when adjudicating a motion to dismiss, 123 F. App'x 694 (6th Cir. 2005), to be distinguishable from the case at bar. The Circuit allows for certain documents in the public record to be considered when ruling on a motion to dismiss for failure to state a claim. *Id.* at 697. The Circuit noted in *Passa*, however, "that [in most cases] the use of such documents is proper only for the fact of the documents' existence, and not for the truth of the matters asserted therein." *Id.* In *Passa*, the Circuit found that it was inappropriate for the district court to consider the websites description of the "purpose of the [at-issue] Program" that was "in direct conflict" with other descriptions of the program's purpose. *Id.* at 698. That court reasoned that "if all online statements by a government agency could be relied upon as true by a court considering a motion to dismiss, government agencies could defuse any complaint alleging improper governmental motives merely by stating an arguably proper motive on their website." *Id.* Here, the Court is not considering the website for the truth of any information included therein, but merely to understand how the county and department present their relationship to the public; the Court, therefore, finds that *Passa* does not limit its ability to consider the Brown County websites as one of factors looked at by the Court. 2018 WL 1660086, at *6–7. Additionally, the precedential value of the case is limited as it is unpublished. *Tanner v. Yukins*, 776 F.3d 434, 442 n.2 (6th Cir. 2015).

is "Job & Family Services."  *See* Brown County Ohio Website, http://www.browncountyohio.gov/ (last visited Oct. 23, 2019). Clicking on that link takes users to a page which lists contact information for the BCDJFS, but the top of the webpage still prominently says "Brown County, Ohio Government Web Portal." *See* Brown County Ohio Website, http://www.browncounty ohio.gov/index.php/job-a-family-services (last visited Oct. 23, 2019). Additionally, the website for BCDJFS includes "Brown County Ohio" in larger font than "Department of Job and Family Services," and, in the "About Us" section, it explains that "Brown County [not BCDJFS] provides a number of services to families and individuals in need of assistance." *See* BCDJFS Website, http://browncountyjfs.com/ about-us/ (last visited Oct. 23, 2019). Like in *Longwood, LLC*, this evidence all supports a finding that BCDJFS is merely an extension of Brown County rather than a separate entity. 2018 WL 1660086, at *6–7.

Given that Brown County has significant control over BCDJFS and BCDJFS holds itself out publicly as part of Brown County, the Court finds that BCDJFS is an extension of Brown County, rather than a separate entity. The level of control indicated by the Ohio Revised Code would be sufficient, in and of itself, to support this finding. *See Hocker*, 2013 WL 587897, at *4. Therefore, BCDJFS does not have the capacity to be sued and the Motion to Dismiss must be **granted**.

Plaintiff's request that, "should this Court believe that Brown County, rather than BCDJFS, is the appropriate Defendant, [they be granted] leave to amend their Complaint to substitute the County in place of BCDJFS." (Doc. # 15 at 5). This request, however, is not a proper motion before the Court. *See* L.R. 7.1 (requiring a motion to, among other things, "state with particularity the grounds for the motion, the relief sought, and the legal

argument necessary to support it" and include a proposed order). Should they choose, they may submit a procedurally proper motion to amend their First Amended Complaint, which complies with the Local Rules.

IV. CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1)  The Motion to Dismiss filed by Defendant BCDJFS (Doc. # 9) is **GRANTED**;

(2)  Plaintiffs' Motion for Leave to File a Rebuttal Memorandum to Defendant's Motion to Dismiss (Doc. # 17) is **GRANTED**;

(3)  The tendered Rebuttal Memorandum (Doc. # 17-1) **shall be filed** in the record; and

(4)  Plaintiffs may file a proper motion to amend their First Amended Complaint within **twenty (20) days** from the date of entry of this Order.

This 28th day of October, 2019.

Signed By:
David L. Bunning
United States District Judge

K:\DATA\ORDERS\Cov2019\19-36 BCDJFS MTD.docx