UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 19-36-DLB-CJS

KRISTI PITTMAN and DALE
GOODEN, as Parents, Guardians,
and Next Friends of M.G., J.G., and D.G.          PLAINTIFFS

vs.                **REPORT AND RECOMMENDATION**

ANGELA RUTHERFORD, et al.                          DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \* \*

Plaintiffs Kristi Pittman and Dale Gooden move for leave to amend their Complaint to add Brown County, Ohio as a defendant. (R. 24). Defendants Angela Rutherford and Megan Siep respond that leave should be denied because amendment is futile since Brown County is immune from suit. (R. 26). Oral argument was held (R. 29), supplemental briefs have been filed (R. 30, 31), and Plaintiffs' Motion is ripe for the issuance of a Report and Recommendation, *see* 28 U.S.C. § 636(b). For the reasons below, it will be recommended that the Motion to Amend **be denied.**

**I.   BACKGROUND**

Plaintiffs filed this lawsuit in Bracken County Circuit Court and allege that Defendants, employees of Brown County, Ohio, Department of Job and Family Services (BCDJFS), concealed the sexual abuse history of a child placed in Plaintiffs' home in order to deceive Plaintiffs into accepting the placement. (*Id.* at 62). That child later sexually abused Plaintiffs' children. (R. 1-1, Page ID 61-62).[1] Plaintiffs raise claims of fraudulent and negligent misrepresentation and intentional infliction of emotional distress. (*See id.* at 57-64).

---

[1] A detailed factual background is contained in the presiding District Judge's Order dismissing BCDJFS from the case. (R. 22, Page ID 176-79).

After Defendants removed the case to federal court on diversity grounds, BCDJFS moved to dismiss the Complaint, arguing it was "not a legal entity with the capacity to be sued" and it was entitled to "political subdivision immunity." (R. 9-1, Page ID 97-98). After further briefing, the presiding District Judge concluded that BCDJFS was "an extension of Brown County, rather than a separate entity . . . [and] does not have the capacity to be sued." (R. 22, Page ID 185). Because the motion to dismiss was granted on this ground, "the Court [did] not address the issue of immunity." (*Id.* at 180). Plaintiffs then filed the pending Motion to Amend their Complaint to add Brown County as a defendant. (R. 24).

Relying upon Federal Rule of Civil Procedure 15(a)(2), Plaintiffs argue that they should be given leave to amend because "[t]his case is relatively new and no discovery has taken place. Defendants, therefore, will not be prejudiced by allowing this Amendment." (R. 24-1, Page ID 197). Defendants respond that amendment should be denied as futile because "Brown County, Ohio is entitled to immunity and therefore may not be sued." (R. 26, Page ID 212). The Court heard oral argument on the motion, afterwards directing the parties to file supplemental briefs (R. 29), which they have done (R. 30, 31).

## II. STANDARD OF REVIEW

Plaintiffs' Motion to Amend is governed by Civil Rule 15, which requires a court to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "A motion to amend a complaint should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, *or would be futile*." *Colvin v. Caruso*, 605 F.3d 282, 294 (6th Cir. 2010) (emphasis added) (quoting *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995)). "Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Miller v. Calhoun Cty.*, 408 F.3d 803, 817 (6th Cir. 2005); *see Anderson v. Univ. of Tennessee*, No. 3:15-CV-00513, 2017 WL 499981, at *4 (E.D.

2

Tenn. Feb. 7, 2017) (denying motion to amend complaint as futile where claim would be barred on immunity grounds).

### III.   ANALYSIS

Defendants argue that Brown County is immune from suit. (R. 26, Page ID 209). But as there are two sources of immunity implicated in this case—federal and state immunity—it is first necessary for the Court to identify which source or sources are at issue.

#### A.   Eleventh Amendment Sovereign Immunity is not at Issue

Defendants sometimes describe Brown County's asserted immunity as being "sovereign immunity." (R. 26, Page ID 212). This description and citation to certain authority[2] might suggest that Defendants are claiming entitlement to sovereign immunity in connection with the Eleventh Amendment to the United States Constitution. Plaintiffs construe such an argument, opposing it in their supplemental brief. (R. 31, Page ID 247-49). However, Eleventh Amendment immunity is not at issue because Defendants acknowledged at oral argument that they were not making such an argument. Even if they were, it should be rejected.

"Eleventh Amendment immunity" is a phrase that the Supreme Court has called a "convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment." *Alden v. Maine*, 527 U.S. 706, 713 (1999).

> Rather, as the Constitution's structure, its history, and the authoritative interpretations . . . make clear, the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today (either literally or by virtue of their admission into the Union upon an equal footing with the other States) except as altered by the plan of the Convention or certain constitutional Amendments.

*Id.*

---

[2] (*See* R. 26, Page ID 212) (citing *Franchise Tax Bd. of California v. Hyatt*, 139 S. Ct. 1485 (2019) (discussing sovereign immunity in connection with the Eleventh Amendment)).

Moreover, while "Eleventh Amendment immunity" is discussed in terms of "States' immunity from suit," the immunity "encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities." *Regents of the Univ. of California v. Doe*, 519 U.S. 425, 429 (1997). Whether a state entity is "an arm of the State, and therefore 'one of the United States' within the meaning of the Eleventh Amendment, is a question of federal law." *Id.* at 430 n.5.

> To determine whether an entity is an arm of the state, courts have traditionally looked to several factors, including: (1) whether the state would be responsible for a judgment against the entity in question; (2) how state law defines the entity; (3) what degree of control the state maintains over the entity; and (4) the source of the entity's funding.

*S.J. v. Hamilton Cty., Ohio*, 374 F.3d 416, 420 (6th Cir. 2004) (internal citation omitted).

The Supreme Court and the Sixth Circuit have already considered whether counties are entitled to sovereign immunity in connection with the Eleventh Amendment and concluded they are not. *See Lowe v. Hamilton Cty. Dep't of Job & Family Servs.*, 610 F.3d 321, 330 (6th Cir. 2010) ("The Supreme Court has repeatedly refused to extend sovereign immunity to counties. This is true even when . . . such entities exercise a slice of state power.") (internal quotations and citation omitted)); *also see S.J. v. Hamilton Cty., Ohio*, 374 F.3d at 420 ("Because Ohio counties lack sovereign immunity . . . we affirm, without further discussion, the portion of the district court's order denying immunity to defendant Hamilton County.").

Thus, in this case the Court need not analyze whether Brown County is entitled to sovereign immunity under the Eleventh Amendment. Defendants acknowledged at oral argument and in their supplemental filing that they are not arguing Brown County is immune from suit based on the Eleventh Amendment. And the Supreme Court and Sixth Circuit have held that sovereign immunity under the Eleventh Amendment does not extend to counties.

B.   **State Law Sovereign Immunity**

Defendants argue that "Brown County is entitled to immunity under the laws of both Kentucky and Ohio, and as such may not be sued." (R. 26, Page ID 211). While this argument sometimes invokes "sovereign immunity," it is in terms of Defendants' position that Kentucky and Ohio, *under state law*, grant sovereign immunity to counties. Defendants, not sure which applies in this action, argue Brown County is immune under both Kentucky and Ohio law. And while Defendants decline to choose whether Kentucky or Ohio immunity law applies,[3] Plaintiffs argue that Kentucky law applies to the analysis of whether Brown County is immune and, under Kentucky law, it would not be immune from suit. (R. 27).

Which state's immunity law applies requires the Court to consider choice-of-law rules. "[W]hen sitting in diversity [a court] must apply the choice of law rules of the forum state to determine which state's laws govern the dispute." *Town of Smyrna, Tenn. v. Mun. Gas Auth. of Georgia*, 723 F.3d 640, 645 (6th Cir. 2013). Accordingly, the Court considers Kentucky's choice-of-law rules.

Plaintiffs argue that Kentucky would apply its own immunity law based on analysis of the differing choice-of-law considerations in tort actions and contract actions. (*See* R. 27, Page ID 218 (citing *Petronis v. Churchill Downs, Inc.*, No. 2005-CA-001925-MR, 2007 WL 1520018, at *2 (Ky. Ct. App. May 25, 2007) ("If this were a contract action, Petronis would be correct that the law of the state with the greatest interest in the outcome of the litigation should be applied. However, as a tort action, Kentucky case law clearly holds that any significant contact with Kentucky is sufficient to allow an application of Kentucky law.") (internal citation omitted)).

---

[3] However, Defendants' supplemental brief indicates that they lean towards Ohio immunity law applying. (R. 30).

But Plaintiffs answer the wrong question. The question is not which state's law Kentucky would apply based on the type of action filed. The question is which state's law Kentucky would apply after considering the specific legal dispute at issue, here immunity. *See Saleba v. Schrand*, 300 S.W.3d 177, 181 (Ky. 2009) ("Although Kentucky case law indicates that different choice of law rules apply to tort actions versus contract disputes, these different tests are not significant here because the underlying dispute in this specific appeal is neither a tort nor a contract issue" but concerns "the discoverability of allegedly privileged communications.").

"[T]here is no decision directly on point" from Kentucky's "highest court" as to which state's immunity law Kentucky would apply in deciding if Brown County is immune. *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 358 (6th Cir. 2013). The best this Court can do is "guess to determine how [the Kentucky Supreme Court], if presented with the issue, would resolve it." *Id.* at 358-59. Recent caselaw from the Kentucky Supreme Court suggests that Kentucky would defer to Ohio's immunity law on comity grounds. *See State v. Great Lakes Minerals, LLC*, No. 2018-SC-000161-TG, 2019 WL 6971565 (Ky. Dec. 19, 2019).

    1.  **Kentucky Would Apply Ohio Immunity Law**

*Great Lakes Minerals* addressed a dispute between a Kentucky company that sued Ohio and Ohio's Tax Commissioner in a 42 U.S.C. § 1983 action in a Kentucky state court over Ohio's allegedly improper collection of Ohio taxes. *Id.* at *1. Noting that states retain sovereign immunity from private suits brought in other states' courts under the Supreme Court's recent decision in *Franchise Tax Board of California v. Hyatt*, 139 S. Ct. 1485 (2019) (*Hyatt III*), the Kentucky Supreme Court concluded that Ohio and the Tax Commissioner (in his official capacity) were immune from suit. *Id.* at *2. As to the Tax Commissioner's immunity in his personal capacity, the Kentucky Supreme Court noted that "the scope of immunity available to state government officials in a federal civil rights action under § 1983 derives from the *state's common law immunity*

6

*doctrine.*" *Id.* at *3 (emphasis added and citation omitted). Continuing, the Kentucky Supreme Court observed that, to determine whether the Tax Commissioner,

> in his personal capacity, is immune from suit, we must turn to the common law doctrine of immunity. Any immunity determination by this Court would require us not only to evaluate Testa's actions but also to interpret Ohio tax law.
>
> Because our decision would ultimately turn on Ohio law, we feel compelled to consider the doctrine of comity. This doctrine "is one of deference and respect among tribunals of overlapping jurisdiction; in accordance with comity, the courts of one state or jurisdiction give effect to the laws and judicial decisions of another, not as a matter of obligation but out of deference and respect."

*Id.* at *3-4 (quoting 16 Am. Jur. 2d *Conflict of Laws* § 11 (2019)). Noting that federal courts applying the comity doctrine have dismissed § 1983 actions challenging a state's tax system, the Kentucky Supreme Court felt compelled to reach a similar result.

> As noted above, the question before us—whether [the Tax Commissioner] may be held personally liable for violations of § 1983—turns on Ohio law. In essence, then, we are required to determine whether [his] imposition of the CATS assessment on Great Lakes was consistent with Ohio law. As the *McNary* Court explained, any declaration from this Court about the lawfulness of [his] application of Ohio law would be intrusive and could disrupt Ohio's state tax administration.
>
> In sum, we believe that Ohio's state courts are better suited to efficiently evaluate and apply Ohio law to this issue. Should the case progress further, Ohio's courts would also be better suited to evaluate the facts, and to consider whether [the Tax Commissioner] caused the deprivation of a constitutional right while acting under the color of Ohio state law. Accordingly, relying on the principle of comity, we hereby dismiss [the Tax Commissioner] in his personal capacity.

*Id.* at *4.

While the legal posture of this case is different, *Great Lakes Minerals* demonstrates that Kentucky is not quick to disregard another State's law that implicates an immunity analysis. This Court's best "guess" is that Kentucky would defer to Ohio's immunity analysis rather than apply its own immunity law. *See Town of Smyrna, Tenn.*, 723 F.3d at 646 (concluding that "Tennessee would apply Georgia sovereign immunity law as a matter of comity" to certain claims).

7

And if Ohio immunity law were applied in this case, Defendants have presented a persuasive and unchallenged argument demonstrating that Brown County is entitled to immunity. (*See* R. 26, Page ID 211-212). "Ohio's immunity statutes were revised in 2003 to provide immunity from suit." *Sabo v. City of Mentor*, 657 F.3d 332, 336 (6th Cir. 2011). Ohio law provides, with some exceptions, immunity to political subdivisions.

> Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

Ohio Revised Code (ORC) § 2744.02(A)(1). ORC § 2744.01(F) defines a "political subdivision" to include counties, and ORC § 2744.01(C)(2)(m) defines "governmental function" to include "[t]he operation of a job and family services department or agency." Brown County is thus immune unless an exception applies. *See also Moore v. Lake Cty.*, No. 2009-L-053, 2010 WL 761100, at *5 (Ohio Ct. App. Mar. 5, 2010) (concluding that Lake County Department of Job and Family Services was immune under ORC § 2744 absent application of any exceptions). Plaintiffs have not argued, and it is not otherwise apparent, that any exceptions to immunity apply. *See id.* ("The record below does not support the applicability of any of these exceptions to immunity. Moreover, appellants do not even attempt to argue that any of these exceptions apply."); ORC § 2744.02(B) (listing, as one exception to immunity, negligent operation of a motor vehicle, although this exception has its own exceptions).

In summary, recent authority from the Kentucky Supreme Court suggests Kentucky would look to Ohio law of immunity under the circumstances here. And Ohio law would view Brown County as immune from suit. Therefore, Plaintiffs' Motion to Amend their Complaint to add Brown County as a defendant would be futile.

8

### 2. If Kentucky Law Applied, Brown County Would Still be Immune

Because there is no case directly indicating that Kentucky would apply Ohio immunity law in these circumstances, the result if Kentucky law were to apply has also been considered. This is also the position Plaintiffs advocated – that Kentucky law would apply. But looking to Kentucky law, Brown County would still be immune.

The Court begins with what is undisputed—Plaintiffs and Defendants agree that Kentucky law provides immunity to Kentucky counties. (*See* R. 27, Page ID 222) (citing *Lexington-Fayette Urban Cty. Gov't v. Smolcic*, 142 S.W.3d 128, 132 (Ky. 2004) ("Kentucky counties are cloaked with sovereign immunity. This immunity flows from the Commonwealth's inherent immunity by virtue of a Kentucky county's status as an arm or political subdivision of the Commonwealth.") (internal citation omitted)); (*see* R. 30, Page ID 241). However, Plaintiffs argue that because Brown County is an Ohio county and not a Kentucky county, Kentucky would seek to protect its own citizens rather than extending immunity to an Ohio county. (*See* R. 27, Page ID 221-23). Defendants maintain that the Full Faith and Credit Clause forecloses Plaintiffs' argument.

The Supreme Court has "held that the Full Faith and Credit Clause does not compel 'a state to substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate.'" *Franchise Tax Board of California v. Hyatt*, 538 U.S. 488, 494, (2003) (*Hyatt I*). Yet, assuming arguendo that Kentucky would be free under the Full Faith and Credit Clause to disregard Ohio's immunity law and apply its own immunity law, the Full Faith and Credit Clause would prohibit it from evincing a "policy of hostility" towards Ohio. The Supreme Court's opinion in *Franchise Tax Board of California v. Hyatt*, 136 S. Ct. 1277, 1281 (2016) (*Hyatt II*) is instructive.

*Hyatt II* discussed that in *Hyatt I*, Nevada had permitted a suit in its courts against California and had applied its own immunity law rather than California immunity law, a practice

9

the *Hyatt I* Court permitted "as consistent with the Full Faith and Credit Clause." 136 S. Ct. at 1281. In *Hyatt II*, the Nevada suit had since resulted in a damages award, and the Nevada Supreme Court declined to apply its own statutory cap for damages, but subjected California to a higher liability under a special rule it created. *Id.* at 1282. "The Nevada Supreme Court explained its departure from those general principles by describing California's system of controlling its own agencies as failing to provide 'adequate' recourse to Nevada's citizens." *Id.* (internal citation omitted). The Supreme Court concluded that Nevada's explanation was lacking and violative of the Full Faith and Credit Clause.

> Such an explanation, which amounts to little more than a conclusory statement disparaging California's own legislative, judicial, and administrative controls, cannot justify the application of a special and discriminatory rule. Rather, viewed through a full faith and credit lens, a State that disregards its own ordinary legal principles on this ground is hostile to another State. A constitutional rule that would permit this kind of discriminatory hostility is likely to cause chaotic interference by some States into the internal, legislative affairs of others.

*Id.* Here, Plaintiffs ask this Court to condone what *Hyatt II* essentially forbids, arguing that Kentucky could decline to apply its *own* immunity law to Brown County because Brown County is not a *Kentucky* county. Such "hostility" violates the Full Faith and Credit Clause.

In summary, even were the Court to find that Kentucky law applies on the question of immunity, Kentucky would grant immunity to Brown County under Kentucky's own immunity laws. Therefore, Plaintiffs' Motion to Amend their Complaint to add Brown County as a defendant would also be futile were Kentucky law to apply.

IV.   **CONCLUSION AND RECOMMENDATION**

For the reasons discussed above, **IT IS RECOMMENDED** that Plaintiffs' Motion for Leave to Amend Complaint (R. 24) be **denied as futile.**

Specific objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service or further appeal is waived. Fed. R. Civ. P.

72(b)(2); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140, 155 (1985). A general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written and specific objection. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991)). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *Howard*, 932 F.2d at 509. A party may respond to another party's objections within fourteen (14) days of being served with a copy of those objections. Fed. R. Civ. P. 72(b)(2).

Dated this 7th day of July, 2020.



Signed By:
**Candace J. Smith**
United States Magistrate Judge

J:\DATA\Orders\civil cov\2019\19-36-DLB R&R re #24 P mtamend.docx