UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 19-36-DLB-CJS

KRISTI PITTMAN and DALE GOODEN, as Parents,
Guardians, and Next Friends of M.G., J.G., and D.G.                      PLAINTIFFS

v.                    **MEMORANDUM OPINION AND ORDER**

ANGELA RUTHERFORD, et al.                                                DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \*

Plaintiffs Kristi Pittman and Dale Gooden allege that their minor children were sexually abused by a foster child living in their home and that employees of the Brown County, Ohio Department of Job and Family Services ("BCDJFS") misled them about the foster child's history of sexual abuse. Pittman and Gooden brought state-law tort claims against BCDJFS and two of its employees. This Court dismissed Plaintiffs' claims as to BCDJFS because, as a department of Brown County, it could not be sued in its own right. (Doc. # 22). Plaintiffs now seek leave to amend their Complaint in order to add Brown County as a defendant instead. (Doc. # 24). Defendants oppose the Motion, arguing that amendment would be futile given the County's immunity from suit under state law. (Doc. # 26). In a Report and Recommendation ("R&R"), Magistrate Judge Candace J. Smith agreed with Defendants and recommended denying the Motion as futile. (Doc. # 32). Plaintiffs have filed Objections to the Magistrate Judge's R&R (Doc. # 33), to which Defendants have responded (Doc. # 34). Seeing no error in the Magistrate Judge's analysis, Plaintiffs' Objections are **overruled** and the Motion is **denied**.

1

I.       **FACTUAL AND PROCEDURAL BACKGROUND**

The allegations in this case have been recited in a previous Order of the Court, (*see* Doc. # 22 at 1-4), and will be briefly summarized here. During the summer of 2011, Plaintiffs, who are Kentucky residents, conducted discussions with BCDJFS about fostering M.G. after he was removed from his mother's custody. (Doc. # 1-1 at 55-56). Out of concern for the three minor children already living in their home, Plaintiffs specifically indicated to Defendants that "they would not accept placement of M.G. (male) in the home if the child had been sexually abused or had committed any acts of sexual abuse or sexual acting out." (*Id.* at 56). In response, Defendants Angela Rutherford and Megan Siep, who were employees of BCDJFS, assured Plaintiffs that M.G. had neither been sexually abused nor committed acts of sexual abuse and had not exhibited behaviors suggesting that he would be sexually aggressive. (*Id.*). Relying on these representations, Plaintiffs accepted placement of M.G. into their home. (*Id.* at 57).

Years later, Plaintiffs discovered that M.G. had sexually abused the other three children in their home and that M.G. planned to engage in further sexual acts with the children. (*Id.*). After learning of this abuse, Plaintiffs obtained counseling records that indicated M.G. was removed from his mother's home "due to sexual abuse allegations" and, furthermore, that "he had tried to rape a younger female while in foster care." (*Id.* at 57-58).

Following this discovery, Plaintiffs sued Rutherford, Siep, and BCDJFS in Bracken Circuit Court, bringing state-law claims of negligent misrepresentation, fraudulent misrepresentation, and intentional infliction of emotional distress. (*Id.* at 9-11). After Plaintiffs amended their Complaint in state court, (*id.* at 53-61), Defendants removed the

case to this Court on the basis of diversity jurisdiction. (Doc. # 1). BCDJFS then moved to dismiss Plaintiffs' claims against it, arguing that, as a department or agency of Brown County, it could not sue or be sued in its own right. (Doc. # 9). BCDJFS argued in the alternative that, even if it were eligible to be sued, it was immune from liability under state law. (*Id.*). The Court granted the motion on the first basis, explaining that "if the entity being sued is 'merely an extension of the county or city,' the proper party is the county or city rather than the entity." (Doc. # 22 at 6-10). Because BCDJFS was dismissed on the ground that it was not the proper party, the Court did not reach the question of whether BCDJFS—or by extension Brown County—would be immune from suit. (*Id.* at 5). Also in its Order, the Court declined Plaintiffs' request in the alternative to substitute Brown County as a defendant, instructing that "[s]hould [Plaintiffs] choose, they may submit a procedurally proper motion to amend their First Amended Complaint." (*Id.* at 11).

Plaintiffs did just that on November 18, 2019 and attached a proposed Second Amended Complaint. (*See* Docs. # 24 and 24-2). In the memorandum supporting their Motion to Amend Complaint, Plaintiffs argue that amending the Complaint to add Brown County is proper under Federal Rule of Civil Procedure 15 because "[t]his case is relatively new and no discovery has taken place." (Doc. # 24-1 at 1). Defendants oppose Plaintiffs' Motion. They contend that "[r]egardless of whether the Court applies Kentucky law or Ohio law to this matter, Brown County, Ohio is entitled to immunity and may not be sued." (Doc. # 26 at 3).

Following oral argument and the submission of supplemental briefing (Docs. # 29, 30, and 31), the Magistrate Judge concluded in an R&R that Brown County would be immune from liability and, accordingly, amending the Complaint to add Brown County

3

would be futile. (Doc. # 32 at 10). In reaching that conclusion, the Magistrate Judge first determined that Kentucky courts would defer to Ohio immunity law on the basis of comity, a doctrine under which "the courts of one state or jurisdiction give effect to the laws and judicial decisions of another, not as a matter of obligation but out of deference and respect." (*Id.* at 7) (quoting *Ohio v. Great Lakes Minerals, LLC*, 597 S.W.3d 169, 173 (Ky. 2019)). Ohio law, in turn, immunizes "political subdivisions" from liability for the acts or omissions of its employees "in connection with a governmental or proprietary function." (Doc. # 32 at 8) (quoting ORC § 2744.02(A)(1)). As Ohio defines "political subdivision" to include "counties," ORC § 2744.01(F), and "governmental function" to include "[t]he operation of a job and family services department or agency," ORC § 2744.01(C)(2)(m), the Magistrate Judge reasoned that Brown County would be immune from liability for the alleged torts committed by its employees in this case. (Doc. # 32 at 8).

The Magistrate Judge next determined that, even if Ohio immunity law did not apply as a matter of comity, the Full Faith and Credit Clause of the U.S. Constitution required Kentucky courts to provide immunity to Brown County. (*Id.* at 9). Relying upon the Supreme Court's interpretation of the Full Faith and Credit Clause in *Franchise Tax Board of California v. Hyatt*, 136 S. Ct. 1277, 1279 (2016) ("*Hyatt II*"), the Magistrate Judge reasoned that Kentucky's failing to grant immunity to Brown County would amount to an unconstitutional "policy of hostility to Ohio," because Kentucky law treats its own counties as immune. (*See* Doc. # 32 at 9-10).

Plaintiffs filed timely Objections to the Magistrate Judge's R&R (Doc. # 33). Defendants responded. (Doc. # 34). The deadline for filing a reply memorandum under the local rules has now expired. Accordingly, the matter is ripe for the Court's review.

4

II. ANALYSIS

A. Standard of Review

A district court may reconsider a magistrate judge's decision on a pretrial, non-dispositive matter, such as a motion to amend pleadings, where it has been shown that the magistrate judge's order is "clearly erroneous or contrary to law."[1] 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). "This standard requires the District Court to review findings of fact for clear error and to review matters of law de novo." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) (quoting *EEOC v. City of Long Branch*, 866 F.3d 93, 99 (3d. Cir. 2017)).

B. Plaintiffs' Objections

In the memorandum supporting their Objections to the Magistrate Judge's R&R, Plaintiffs do not contest that Ohio law would provide immunity to Brown County.[2] Rather, Plaintiffs argue that Kentucky would not defer to Ohio law under the doctrine of comity and that the Full Faith and Credit Clause would not compel Kentucky courts to immunize

---

[1] District courts in the Sixth Circuit as well as courts of appeal in other circuits have considered motions to amend pleadings to be non-dispositive when, as here, the denial of those motions does not result in dismissal of the entire action. *See, e.g.*, *Hall v. Norfolk S. Ry. Co.*, 469 F.3d 590, 595 (7th Cir. 2006); *Cont'l Cas. Co. v. Dominick D'Andrea, Inc.*, 150 F.3d 245, 250-51 (3d Cir. 1998); *Everett v. Metro. Life Ins. Co.*, No. 3:16-cv-74, 2017 WL 2126329, at *2 n.1 (W.D. Ky. May 16, 2017); *Hira v. New York Life Ins. Co.*, No. 3:12-cv-373, 2014 WL 2177799, at *1-2 (E.D. Tenn. May 23, 2014). Rather than issue an order on Plaintiffs' Motion to Amend, the Magistrate Judge issued an R&R, which is typically used to convey a recommended disposition on a dispositive motion. Given the weight of authority in favor of classifying motions to amend as non-dispositive, the Court will apply the standard of review for orders on non-dispositive motions. In any event, the distinction between dispositive and non-dispositive motions in this case is insignificant, as both require de novo review of issues of law, and the primary issues raised in Plaintiffs' Objections are legal rather than factual. *See Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) (reciting standard for non-dispositive motions); *United States Fid. & Guar. Co. v. Thomas Solvent Co.*, 955 F.2d 1085, 1088 (6th Cir. 1992) (reciting standard for dispositive motions).

[2] The Magistrate Judge likewise characterized as "unchallenged" Defendants' argument that Brown County would be immune under Ohio law. (Doc. # 32 at 8).

5

Brown County in this case. (*See* Doc. # 33 at 1-4). As discussed below, these arguments are without merit.

First, the Magistrate Judge correctly concluded that Kentucky courts would recognize Brown County's immunity as a matter of comity.[3] As this is a diversity action, the Court must apply the substantive law of the state in which it sits, including that state's law with respect to comity. *See Town of Smyrna v. Mun. Gas Auth. of Ga.*, 723 F.3d 640, 646-47 (6th Cir. 2013); *Lee v. Miller Cnty.*, 800 F.2d 1372, 1375 (5th Cir. 1986). Kentucky courts have long recognized the value and importance of comity in maintaining harmonious relations between the states, and have enforced the laws of other states as long as those laws "are not obnoxious to some well-founded rule of domestic policy established to protect the morals, health, safety and welfare" of Kentucky citizens. *Lee v. Belknap*, 173 S.W. 1129, 1137 (Ky. 1915); *accord Cloud v. Hug*, 281 S.W.2d 911, 913-14 (Ky. 1955); *R. S. Barbee & Co. v. Bevins, Hopkins & Co.*, 195 S.W. 154, 155 (Ky. 1917). The court in *Lee v. Belknap*, for example, applied the intestate succession law of New Jersey in a dispute between a deceased woman's estate and the woman's New Jersey widow. 173 S.W. at 1137. In rejecting the estate's argument that the conflicting law of Kentucky should apply instead, the court held that "the mere fact that the law of

---

[3] Although the Magistrate Judge referred to comity as a choice of law principle, (Doc. # 32 at 5-8), comity is better understood as a doctrine that gives effect to the law of another state "not as a rule of law, but rather out of deference or respect." *See Lee v. Miller Cnty.*, 800 F.2d 1372, 1375 (5th Cir. 1986) (applying Texas law to give effect to the immunity law of Arkansas); *see also Biscoe v. Arlington Cnty.*, 738 F.2d 1352, 1359 (D.C. Cir. 1984) (noting that "state courts faced with claims of immunity either by sister states, or by their lesser governmental units, have resolved the issue by reference to the forum state's policy on comity, not by rigid application of choice of law rules."). Defendants make no serious attempt to show that, under choice of law rules, Ohio law would provide the rule of decision on the immunity question. Thus, for purposes of this opinion, the Court assumes that Kentucky substantive law applies, and that under such law, Kentucky would apply Ohio immunity law as a matter of comity.

6

another State differs only in degree from the law of this State cannot make it so obnoxious to our laws that our courts will not enforce it." *Id.* To disregard New Jersey law, the court warned, "would bring about a condition of affairs that would create intolerable uncertainty and confusion in the adjustment of rights arising in other States that it so often becomes the duty of our courts to enforce." *Id.*

Ohio's immunity policy is sufficiently aligned with that of Kentucky's such that Kentucky courts would honor Ohio immunity law. Both states have a general policy of immunity for their counties. As discussed, Ohio counties are, with certain exceptions, shielded from liability for the torts of their agents and employees that occur "in connection with a governmental or proprietary function." ORC § 2744.02(A). Kentucky arguably has an even stronger policy of immunity for its counties. Counties in Kentucky are "cloaked with sovereign immunity," *Schwindel v. Meade Cnty.*, 113 S.W.3d 159, 163 (Ky. 2003), and as a consequence, are "absolutely immune from suit unless the state has given its consent or otherwise waived its immunity," *N. Ky. Water Dist. v. Carucci*, 600 S.W.3d 240, 243 (Ky. 2019). Moreover, it appears that neither Ohio nor Kentucky has eliminated county immunity for the types of torts alleged in this case.

It is true, as Plaintiffs point out, that the origin of immunity differs for counties in Ohio and Kentucky. (*See* Doc. # 33 at 2). While Kentucky counties are considered arms of the state and thus benefit from the state's inherent sovereign immunity, *Lexington-Fayette Urban Cnty. Gov't v. Smolcic*, 142 S.W.3d 128, 132 (Ky. 2004), Ohio counties are considered "political subdivisions" that are expressly not part of the state under Ohio law, *see* ORC § 2743.01(A) and (B). The immunity extended to counties under Ohio law is therefore a creature of statute, not an extension of the state's traditional sovereign

7

immunity. *See Sanderbeck v. Cnty. of Medina*, 956 N.E.2d 832, 836 (Ohio 2011). However, this distinction between the immunity regimes of Ohio and Kentucky does not prevent Kentucky courts from enforcing Ohio law. "Mere dissimilarity" between Kentucky law and the law of another state does not render another state's law "obnoxious" to Kentucky public policy. *Lee*, 173 S.W. at 1137. The fact remains that had the defendant in this action been a Kentucky county, it would have been completely immune.

The Fifth Circuit in *Lee v. Miller County*, 800 F.2d 1372 (5th Cir. 1986), cited by Defendants, arrived at a similar conclusion in an analogous case involving a claim for immunity by a foreign county. There, the question was whether Texas courts would extend immunity to an Arkansas county as a matter of comity. *Id.* at 1375. At the time *Lee* was decided, "Arkansas provide[d] immunity to its counties for their negligent acts." *Id.* at 1374 n.5. The court in *Lee* determined that, like Kentucky courts, "Texas courts will recognize another state's law unless it is repugnant to Texas public policy." *Id.* at 1375. From this principle, the court inferred that "[u]nless extending immunity to another state or its subdivision would violate Texas public policy, a Texas court would give effect to the law of that state." *Id.* Despite some uncertainty as to whether Texas would immunize its counties to the extent Arkansas would its own, the court in *Lee* went on to hold that Arkansas' immunity policy was not repugnant to that of Texas and therefore Texas would honor Arkansas law on the basis of comity. *Id.* at 1376-77.

Further, the comity doctrine takes on heightened significance in the context of lawsuits involving complex statutory schemes of other states, such as Ohio's county immunity scheme at issue here. In *Ohio v. Great Lakes Minerals, LLC*, 597 S.W.3d 169, 173-74 (Ky. 2019), relied upon by the Magistrate Judge, the Kentucky Supreme Court

8

declined to hold an Ohio tax official liable under 42 U.S.C. § 1983 because his liability turned on a question of Ohio law. Motivating the court's decision was a reluctance to "disrupt Ohio's state tax administration." *Id.* at 174. The court, "relying on the principle of comity," accordingly dismissed the tax official from the lawsuit in his personal capacity. *Id.*

Plaintiffs in their Objections argue that *Great Lakes Minerals* is inapposite because the grant of immunity in that case was based on Ohio's status as a state, which retains its sovereign immunity in courts of other states. (*See* Doc. # 33 at 1-2) (citing *Franchise Tax Board of California*, 139 S. Ct. 1485 (2019) ("*Hyatt III*")). Brown County, Plaintiffs contend, is not considered an arm of the state under Ohio law and thus the reasoning of *Great Lakes Minerals* would not apply. (*Id.* at 2). But while it is true that the court in *Great Lakes Minerals* dismissed the *state of Ohio* on the ground of sovereign immunity, it invoked the separate ground of comity to dismiss the *Ohio Tax Commissioner* in his individual capacity. 597 S.W.3d at 172, 174. The policy justifications for the comity doctrine discussed in *Great Lakes Minerals*, including deference to and respect for the laws of another state, *id.* at 173, apply with substantial force to this case, which involves Ohio's statutory immunity policy for its counties. Unsurprisingly, federal courts sitting in diversity have recognized that the comity analysis remains the same regardless of whether the claim for immunity is made by a county or a state. *See Lee*, 800 F.2d at 1375 n.12 (citing *Biscoe v. Arlington Cnty.*, 738 F.2d 1352, 1359 (D.C. Cir. 1984)).

Plaintiffs press further, arguing that Ohio's immunity rule is in fact violative of Kentucky public policy because it deprives Kentucky tort victims of a remedy. (Docs. # 27 at 6-9, 31 at 6-7, and 33 at 3). Thus, while Plaintiffs acknowledge that Kentucky

9

provides immunity to its own counties, they contend that Kentucky would not grant an Ohio county immunity pursuant to the comity doctrine when doing so would harm a Kentucky citizen. (Doc. # 27 at 8-9). In support of this contention, Plaintiffs cite several cases where Kentucky courts chose to apply Kentucky law to disputes involving out-of-state tortfeasors. (Docs. # 31 at 6 and 33 at 3). But in each of these cases, the plaintiffs actually stood to benefit from the application of Kentucky law, whereas in the present case, it is undisputed that Plaintiffs would fare no better had the alleged tortfeasor been a Kentucky county or one of its employees. *Foster v. Leggett*, for instance, involved Ohio's so-called "guest statute," which forecloses recovery for a non-paying vehicle passenger injured as a result of the driver's negligence. 484 S.W.2d 827, 827-28 (Ky. 1972) (citing ORC § 4515.02). The court in *Foster* applied Kentucky law to allow the Kentucky plaintiff to bring a negligence action against the Ohio driver. *Id.* at 829; *see also Arnett v. Thompson*, 433 S.W.2d 109, 112, 114 (Ky. 1968) (reaching similar result). The plaintiff in *Kennedy v. Ziesmann*, 522 F. Supp. 730, 731 (E.D. Ky. 1981), faced the prospect of mandatory arbitration under Ohio law for a medical malpractice claim. Decrying the Ohio law as contrary to Kentucky public policy, the court applied Kentucky law to provide the plaintiff "the right to a trial in court in personal injury actions." *Id.* Thus, unlike here, the foreign state's law in these cases was, in a very real sense, "obnoxious" to Kentucky public policy.

In addition, as the Magistrate Judge pointed out, permitting plaintiffs to hold liable out-of-state counties, when Kentucky counties are immune, would run afoul of the Full Faith and Credit Clause of the U.S. Constitution. (*See* Doc. # 33 at 9-10). The Full Faith and Credit Clause states that "Full Faith and Credit shall be given in each State to the

public Acts, Records, and judicial Proceedings of every other State." [4]  U.S. Const. art. IV, § 1.  In *Franchise Tax Board of California v. Hyatt*, 136 S. Ct. 1277, 1281 (2016) ("*Hyatt II*"), the Supreme Court held that while the Clause "does not require a State to substitute for its own statute . . . the statute of another State reflecting a conflicting and opposed policy," a state's decision not to apply another state's statute on this ground must not evince a "policy of hostility to the public Acts of that other State." (internal quotation marks omitted).  Thus, in an earlier case involving the same parties, the Supreme Court allowed Nevada to disregard California law immunizing California agencies, because Nevada permitted its own agencies to be sued.  *See Franchise Tax Bd. of Cal. v. Hyatt*, 538 U.S. 488, 499 (2003) ("*Hyatt I*").  By contrast, in *Hyatt II*, the Court found a violation of the Full Faith and Credit Clause where Nevada had attempted to impose liability on the California agency above the $50,000 statutory limit ordinarily applicable to Nevada agencies under Nevada law.  136 S. Ct. at 1280.  The Court in *Hyatt II* observed that Nevada had applied a "special rule of law applicable only in lawsuits against its sister States, such as California."  *Id.* at 1282.  Nevada's rule therefore "reflect[ed] a constitutionally impermissible policy of hostility to the public Acts of a sister State."  *Id.* at 1282-83 (internal quotation marks omitted).

A straightforward application of *Hyatt II* leads to the conclusion that holding Brown County liable would be discriminatory and in violation of the Full Faith and Credit Clause. As already discussed, Ohio statutory law accords immunity to counties in Ohio.  Kentucky

---

[4]     To the extent Plaintiffs argue that the Full Faith and Credit Clause applies only to unequal treatment of sovereign states and not lesser entities such as counties, (*see* Docs. # 31 at 3-4 and 33 at 2), that argument is without merit.  The Clause speaks in terms of "the public Acts . . . of every other State," U.S. Const. art. IV, § 1, which plainly encompasses a state statute granting immunity to that state's counties.

counties are also immune from suit for the torts of their agents and employees. *Schwindel*, 113 S.W.3d at 163.  Therefore, any rule forcing Brown County to defend this lawsuit would constitute "a constitutionally impermissible policy of hostility to the public Acts of a sister State." *Hyatt II*, 136 S. Ct. at 1282-83 (internal quotation marks omitted).

In contending otherwise, Plaintiffs again highlight the fact that Ohio and Kentucky counties derive their immunity from different sources.  Accordingly, Plaintiffs argue, Kentucky's decision not to extend immunity to Brown County would not constitute a "policy of hostility" because Kentucky would be enforcing its own, fundamentally different immunity regime.  (Doc. # 33 at 4).  Plaintiffs further assert that Brown County is comparable to a Kentucky agency whose immunity depends on whether it performs a "governmental function," and that it is questionable whether Brown County performed such a function here.  (Doc. # 27 at 10).

Yet, it is hard to see how the origin of immunity for Ohio counties affects the analysis of the Full Faith and Credit Clause in this case.  In deciding whether Nevada's judgment against a California agency was constitutional, the Court in *Hyatt II* framed the issue in terms of Nevada law, not California law, asking whether Nevada had "applied the principles of Nevada law ordinarily applicable to suits against Nevada's own agencies." 136 S. Ct. at 1283.  Applying the same reasoning to the present case, it is clear that a Kentucky county sued under the causes of action Plaintiffs assert would be immune under Kentucky law.  Moreover, the Full Faith and Credit Clause "is properly brought to bear when a State's choice of law 'threatens the federal interest in national unity by unjustifiably infringing upon the legitimate interests of another State.'"  *Id.* (quoting in a parenthetical *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 323 & n.10 (1981) (Stevens, J. concurring in the

judgment)). Ohio has demonstrated an intent to immunize its counties from the types of claims brought in this case. Ignoring this immunity rule for Ohio counties, when Kentucky would itself immunize its counties in identical circumstances, would be an affront to the purpose of the Full Faith and Credit Clause.[5]

In sum, the Magistrate Judge properly determined that permitting Plaintiffs to amend their complaint to add Brown County would be futile, as the County would be immune from suit under either principles of comity or the Full Faith and Credit Clause.

### C.     Plaintiffs' Request to Certify a Question of State Law

Finally, the Court declines to certify the question of comity presented in this case to the Kentucky Supreme Court. In support of their request for certification, Plaintiffs argue that the question of whether Kentucky would extend immunity to Brown County as a matter of comity is unsettled because Kentucky courts have yet to enforce another state's *immunity law* in particular on the ground of comity.   (Doc. # 33 at 5). The Fifth Circuit in *Lee* faced a similar situation and decided to grant the foreign county immunity under Texas comity principles. There, the court explained that although "the principle that Texas courts will recognize another state's law unless it is repugnant to Texas public policy," "does not translate effortlessly into a rule concerning immunity as a matter of comity, we believe the same principles should apply." 800 F.2d at 1375. Likewise in this case, the Kentucky decisions cited above provide a sufficient degree of certainty that Kentucky would enforce Ohio immunity law under the doctrine of comity. Moreover, the

---

[5]     Plaintiffs' reliance on cases such as *Allstate Insurance Co. v. Hague*, 449 U.S. 302, 313 (1981) (Doc. # 31 at 4-5), is misplaced. *Allstate* held that it was not a violation of the Full Faith and Credit Clause for the state court to apply its own state's law when that state had sufficient contacts with the controversy.  449 U.S. at 312-13.  *Allstate* did not involve the issue presented here, namely the *inconsistent* application of a state's law to the detriment of another state.

13

issue of comity is not dispositive in this case, as the Full Faith and Credit Clause provides an independent basis upon which Brown County would be immune. Thus, certification of the comity issue to the Kentucky Supreme Court is not warranted.

## III. CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1) Plaintiffs' Objections to the Magistrate Judge's R&R (Doc. # 33) are **overruled**;

(2) Plaintiffs' Motion to Amend Complaint (Doc. # 24) is **denied as futile**;

(3) Plaintiffs' request to certify a question of state law to the Kentucky Supreme Court is **denied**; and

(4) To the extent not already completed, the parties shall conduct their Rule 26 conference and file their Rule 26(f) Report of Planning Meeting **not later than November 20, 2020**.

This 30th day of October, 2020.

Signed By:
*David L. Bunning* DB
United States District Judge

J:\DATA\ORDERS\Cov2019\19-36 Order Overruling Objections.docx